**UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SUNOCO PARTNERS MARKETING & TERMINALS, L.P. | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-CV-08178 |
| v. | ) ) | *Jury Trial Requested* |
| U.S. VENTURE, INC., AND U.S. OIL CO., INC. | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR PARTIAL SUMMARY JUDGMENT OF PATENT INFRINGEMENT**

**REDACTED VERSION**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 2

    A. The Technology ............................................................................................... 2

    B. The Invention and the Patents ......................................................................... 2

    C. U.S. Venture's Infringement ........................................................................... 3

        i. Infringement of the '302 Patent Claims 1–3 and 8–9 ......................... 4

        ii. Infringement of the '629 Patent Claims 1–3 ....................................... 12

    D. Technics Admits its System, as Installed, Requires a License ............................ 15

III. APPLICABLE LEGAL STANDARDS ........................................................................ 16

    A. Summary Judgment ......................................................................................... 16

    B. Patent Infringement ......................................................................................... 16

IV. ARGUMENT ............................................................................................................. 17

    A. Infringement by the Apparatus at Green Bay and Madison South ..................... 17

        i. Every Element of the Eight Claims at Issue is Met in the Accused Systems ............................................................................................... 17

        ii. U.S. Venture Conceded Almost Every Claim Element ......................... 17

        iii. At Best, U.S. Venture's LPR 3.2 Final Contentions ██████ ........ 21

    B. There are No Genuine Infringement Defenses .................................................. 22

        i. Claim Construction Is Unnecessary to Determine This Motion .............. 22

        ii. Whether U.S. Venture ████████ Perform Blending Methods is Irrelevant ...................................................................... 26

        iii. The Accused Systems ████████ ........................................... 30

        iv. ████████████ Does Not Avoid Infringement ....................... 31

V. CONCLUSION .......................................................................................................... 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allvoice Developments US, LLC v. Microsoft Corp.*,
  612 F. App'x 1009 (Fed. Cir.), *cert. denied*, 136 S. Ct. 697 (2015)........................................21

*Alticor Inc. v. Ultra-Sun Technologies, Inc.*,
  106 F. App'x 46 (Fed. Cir. 2004) ....................................................................................27, 28

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
  49 F.3d 1575 (Fed. Cir. 1995)...............................................................................................17

*Bergstrom, Inc. v. Glacier Bay, Inc.*,
  No. 08 C 50078, 2012 WL 787240 (N.D. Ill. Mar. 9, 2012) ................................................28

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................................................16

*Chicago Mercantile Exchange, Inc. v. Tech. Research Group, LLC*,
  789 F. Supp. 2d 986 (N.D. Ill. 2011) ..............................................................................29, 30

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005)..............................................................................................27

*Edberg v. CPI-The Alternative Supplier, Inc.*,
  41 F. App'x 426 (Fed. Cir. 2002) ..........................................................................................28

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990)..............................................................................................27

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
  822 F.3d 1312 (Fed. Cir. 2016)..............................................................................................20

*Lifescan, Inc. v. Home Diagnostics, Inc.*,
  76 F.3d 358 (Fed. Cir. 1996)..................................................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................................................16

*N. Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)................................................................................................32

*Northern Telecom Ltd. v. Samsung Electronics Co.*,
  215 F.3d 1281 (Fed. Cir. 2000)..............................................................................................32

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    563 F.3d 1358 (Fed. Cir. 2009)........................................................................16

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
    607 F.3d 784 (Fed. Cir. 2010)..........................................................................27

*Sloan Valve Co. v. Zurn Industries, Inc.*,
    No. 10-CV-00204, 2013 WL 6132598 (N.D. Ill. Nov. 20, 2013) .........................20

*Square D Co. v. E.I. Electronics, Inc.*,
    685 F. Supp. 2d 864 (N.D. Ill. 2010) ...................................................................28

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) (en banc)...........................................................16

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*,
    222 F.3d 958 (Fed. Cir. 2000)..........................................................................31

*Tellabs Operations, Inc. v. Fujitsu Ltd.*,
    No. 08 C 3379, 2009 WL 1329153 (N.D. Ill. May 13, 2009) .................................28

*Thought, Inc. v. Oracle Corp.*,
    No. 12-CV-05601-WHO, 2016 WL 3230696 (N.D. Cal. June 13, 2016) .............................21

*Tokai Corp. v. Easton Enterprises, Inc.*,
    632 F.3d 1358 (Fed. Cir. 2011)..........................................................................16

*Trading Technologies International, Inc. v. CQG, Inc.*,
    No. 05-CV-4811, 2014 WL 4477932 (N.D. Ill. Sept. 10, 2014) ...........................21

*WarnerJenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997).............................................................................................17

**Statutes**

35 U.S.C. § 271...........................................................................................................26

**Rules**

FED. R. CIV. P. 56(C) ......................................................................................................16

Local Rule 56.1(a)(3)................................................................................................2, 3

## I.   INTRODUCTION

Butane is less expensive than gasoline, and more volatile.  By adding the maximum allowable amount of butane to gasoline, the blended gasoline ignites easier and is more profitable to the seller, in this case U.S. Venture.[1]  In this lawsuit, Sunoco has asserted patents covering systems and methods for automated and optimized blending of butane and gasoline.

U.S. Venture first sought to blend butane and gasoline in 2008.  They found that Texon, Sunoco's predecessor as to this technology, had the only available automated system.  Texon proposed to install its patented system at two terminals, provide the butane, and then share a portion of the profits—a proposal that by then had been accepted by multiple other companies with systems installed at thirteen locations.  Unsatisfied with sharing the profits, U.S. Venture spent two years trying to build its own system, ultimately recruiting former-defendant Technics to make components for the first two blending systems.  U.S. Venture bought and configured the remaining system components, and began blending in 2012.  Since then, butane blending has been one of its most profitable businesses.  This Motion concerns those first two systems.

Fact discovery concluded on July 12, 2016, but was extended to August 19, 2016, for the limited purpose of concluding two outstanding depositions.  No further fact discovery is pending.  Claim construction is in process, but is not necessary to resolve this Motion.  And while disputed issues concerning the *methods* used by U.S. Venture to blend gasoline and butane at six terminals may exist, there are no disputes concerning the *apparatus* in place at two of U.S. Venture's terminals, located in Green Bay and Madison, Wisconsin, particularly given U.S. Venture's admissions.  Accordingly, Sunoco seeks summary judgment of infringement on eight system claims.  Such a determination will narrow the disputed issues going forward.

---

[1]     U.S. Oil is a division of U.S. Venture (Dkt. 67 at ¶ 3), and they are collectively referred to herein as "U.S. Venture."

## II.    BACKGROUND

### A.    The Technology

Reid vapor pressure ("RVP") is a common measure of and generic term for gasoline volatility. *See* Sunoco's Local Rule 56.1(a)(3) Statement of Material Facts ("SOF") ¶ 6. The EPA regulates the vapor pressure of gasoline sold at retail stations, setting maximum RVP limits depending on the state and month. *Id.* For example, gasoline sold between May 1 and September 15 may not exceed an RVP of 7.8 to 9.0 pounds-per-square-inch ("psi"), but in other months, it may reach as high as 15.0 psi. *Id.*

Butane is commonly added to gasoline to increase the gasoline's RVP, especially in the colder months to keep cars performing at a consistent level year-around. *Id.* ¶ 8. Adding butane also reduces the cost of gasoline for the gasoline provider because butane is generally less expensive than gasoline bought at the wholesale level. *Id.* Butane can be added until the blend reaches the maximum RVP allowed by the EPA for the specific location and date. *Id.* ¶¶ 6–7. Thus, the difference between the RVP of the gasoline received at a terminal (from a refinery) and the EPA allowable RVP specification determines how much butane can be blended into gasoline before it is delivered from terminals to the retail gas stations. *Id.* ¶ 7.

### B.    The Invention and the Patents

Prior to the invention, butane blending at terminals was typically done using processes in which a person manually drew samples, took measurements, and performed calculations to determine how much butane could be blended. *Id.* ¶ 9. This had many disadvantages including imprecision, inadequate mixing, re-vaporization which caused damage to tank seals, the need for manual testing of the RVP, and a large loss of blend opportunity. *Id.*

Texon Terminals Corp. ("Texon") is a Houston-based company. *Id.* ¶ 11. Along with Mid-Continent Energy Company, Inc. ("MCE"), a company owned by inventor Larry Mattingly,

Texon developed a business of buying and selling gasoline and butane, and installing and operating gasoline and butane blending equipment. *Id.* Mr. Mattingly, along with Texon's Steve Vanderbur, developed the automated butane blending systems and methods now claimed in multiple patents. *Id.* ¶¶ 11–12. Three of those patents are asserted in this lawsuit, U.S. Patent No. 6,679,302 ("the '302 Patent"), No. 7,032,629 ("the '629 Patent"), and No. 7,631,671 ("the '671 Patent"). *Id.* ¶ 12. All three patents share a common specification, although the '671 Patent contains additional text and figures, and all three were assigned to Texon. *Id.* Through an acquisition of Texon's butane blending business, Sunoco became the sole owner of the Patents. *Id.* ¶ 14.

The first two of these three patents, which are at issue in this Motion, are directed to blending systems located at terminals. *Id.* ¶ 13. Terminals include tank storage facilities to receive gasoline from pipelines, and many include loading racks through which gasoline is distributed from the tanks to trucks that transport the gasoline to retail gas stations. *Id.*

### C.    U.S. Venture's Infringement

In 2008, U.S. Venture recognized that there was significant profit to be made in blending butane and gasoline, and after researching found that there was only one vendor marketing an automated system – Texon. *Id.* ¶ 15. After a sales presentation and proposal, U.S. Venture acknowledged that Texon had "a patented, fully automated inline blending system . . . . proven to increase the quantity of butane allowed for blending by 100% over traditional in-tank blending."[2] *Id.* ¶¶ 16–17. U.S. Venture also recognized that ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 18.

---

[2]    U.S. Venture admits that it had specific knowledge of both the '302 and '629 Patents prior to the filing of the Complaint in this lawsuit. *See* SOF ¶ 17.

Despite knowledge of the Patents, U.S. Venture ███████████████████████

███████████████████████████████████████████████████████████████████████

*Id*. ¶ 19. Ultimately, they ████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████ *Id*. U.S. Venture purchased or supplied the

remaining components, such as tanks, truck racks and piping, and combined those components

with the Technics components to create automated blending systems at the Green Bay (Fox

River) and Madison South (McFarland) terminals. *Id*. ¶ 20.

U.S. Venture later confirmed that an automated butane system, as opposed to manual

tank blending method, provides "an opportunity to blend additional volume" and that this

resulted in a "new major revenue stream for U.S. Oil." *Id*. ¶ 10.

### i. Infringement of the '302 Patent Claims 1–3 and 8–9

Claims 1–11 of the '302 Patent cover embodiments of a system for blending gasoline and

butane at a tank farm. *Id*. ¶ 21. Claims 1–3 and 8–9 are at issue in this Motion.

**<u>Claim 1</u>** of the '302 Patent is an apparatus claim and requires:

> 1. A system for blending gasoline and butane at a tank farm comprising:
>
> a) a tank of gasoline;
>
> b) a tank of butane;
>
> c) a blending unit, at the tank farm, downstream of and in fluid connection with the tank of gasoline and the tank of butane;
>
> d) a dispensing unit downstream of and in fluid connection with the blending unit; and
>
> e) a rack, wherein the dispensing unit is located at the rack and is adapted to dispense gasoline to gasoline transport vehicles.

*Id*. ¶ 22. U.S. Venture's LPR 3.2 Final Non-Infringement Contentions do not dispute that

███████████████████████████████████████████████████████████████████████

██████ . *Id*. ¶¶ 29–30, 32, 37, 39.  Indeed, U.S. Venture admits that "the Accused System[s] at the Green Bay Fox River Terminal [and Madison South Terminal] sometimes include[ ] a tank of gasoline before it is blended with butane," and also include a tank of butane.  *Id*. ¶¶ 28, 31.  U.S. Venture only points out that it ████████████████████████████ *id*. ¶¶ 29–30, 32, 37, 39, which may be relevant to damages concerning performance of other claimed methods, but is irrelevant to this apparatus claim.  U.S. Venture took this tack because its evidence confirms that all of the claim elements are met at Green Bay and Madison South.

The general site layout of the Green Bay terminal is shown below and in the SOF attachments.  *Id*. ¶ 23.  With reference to claim 1 above, the tank farm includes ████████

Similarly, the site layout for the Madison South tank farm (*id.* ¶ 24), shown below and to the right, confirms ███████

████████████████████████

████████████████████████

████████████████████████

█████████████████



The blending systems at Green Bay and Madison South include element (d), a dispensing unit downstream of and in fluid connection with the blending unit, and element (e), a rack where the dispensing unit is located. U.S. Venture admits that at all of its terminals which blend butane and gasoline, including Green Bay and Madison South, the blended gasoline is distributed at a rack and dispensed into tanker trucks. *Id.* ¶ 38. After leaving the blending unit, the blended gasoline can flow into a tank and "simultaneously" exit that tank to be dispensed at the rack. *Id.* ¶ 40. Although U.S. Venture has claimed that it ███████████████████████████

████ , *id.* ¶ 39, this ████████████████ is irrelevant for infringing the apparatus claims at issue, as discussed below.

Further, U.S. Venture's evidence confirms that the blending systems at Green Bay and Madison South also include element (c), a blending unit downstream of and in fluid connection with the gasoline tanks and the butane tanks. ████████████████ can be seen by the site layout drawings above, and also in the piping and instrumentation diagram ("P&ID") shown below, which accurately represents the piping of the butane blending systems at Green Bay and Madison South:



*Id.* ¶¶ 25–26. U.S. Venture's corporate representative also confirmed that the gasoline and butane tanks are connected by piping to the blending skid. *Id.* ¶¶ 33–34. Nevertheless, although element (c) is clearly present in its systems, U.S. Venture has claimed that it ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ . *Id.* ¶ 37.

For this apparatus-directed Motion, U.S. Venture's ███████████ are irrelevant. First, this Motion is limited to two terminals whose equipment arrangement cannot be disputed. Second, Technics sold U.S. Venture blending components and was present for their operation at the Green Bay and Madison South terminals, so there is a second and confirming source. *Id*. ¶ 35. Technics stated in its LPR 2.3 Initial Non-Infringement Contentions that "[t]he blending unit of Technics' butane blending system is in fluid connection with a tank of gasoline and tank of butane." *Id*. ¶ 36. Technics' President, Mr. Edwards, observed that the blending system was configured to allow gasoline flow from a storage tank to the blending system at both Green Bay and Madison South. *Id*. ¶ 35.

Third, at the Green Bay terminal, gasoline can go directly from a pipeline to the blending skid, or it could go first to a tank and then to the blending skid, i.e., downstream. *Id*. ¶ 27. U.S. Venture itself testified that Green Bay is configured such that gasoline can be blended tank-to-tank, i.e., through piping from a tank of gasoline to the blending skid and then to another tank. *Id*. ¶ 33. U.S. Venture also testified that blending occurs at the Madison South terminal after gasoline comes from a tank. *Id*. Thus, for both Green Bay and Madison South, all of the claim 1 elements are present, and summary judgment is appropriate.

**Claim 2** of the '302 Patent requires all of the elements of the system of claim 1 and further requires "a process control unit, wherein the process control unit generates a ratio input signal that controls the ratio of butane and gasoline blended by the blending unit." *Id*. ¶ 41. U.S. Venture admitted in corporate testimony that at all of its terminals, a PLC or processor receives inputs and calculates the blend ratio based on a signal from the analyzer representing the RVP of sampled gasoline and butane blend. *Id*. ¶ 42. In the systems installed at Green Bay and Madison South, the PLC manipulates a signal to throttle a valve thereby controlling the flow rate of

butane. *Id.* ¶ 43. U.S. Venture did not dispute in its LPR 3.2 Final Non-Infringement Contentions that ███████████████████████████████████████ █████ *Id.* ¶ 45. In addition, the former Green Bay terminal manager confirmed that after blending started, the system adjusted the blend ratio as needed during the process, and could do so every time a new RVP sample was taken. *Id.* ¶ 44. These undisputed facts are sufficient to satisfy the additional limitation of claim 2, and thus summary judgment is appropriate.

**Claim 3** of the '302 Patent requires all of the elements of system claims 1 and 2, and further requires that "the ratio input signal is derived from a calculation of the ratio of butane and gasoline that will yield a desired vapor pressure." *Id.* ¶ 46.

U.S. Venture conceded in its LPR 3.2 Final Non-Infringement Contentions that ███ ████████████████████████████████████. *Id.* ¶ 48. The Contentions admit that ███████████████████████████████████████ ████████████████████████" *Id.* The accused systems ████████████████ ███████████████████████ *Id.* U.S. Venture's source code for the Green Bay and Madison South terminals ████████████████████████ ███████████████████████████████████████████ ███████ *Id.* ¶ 49.

U.S. Venture also admits that its accused systems use a processor to "receive certain inputs and then calculate a blend ratio at which the butane is blended to the gasoline," and admits that this "blend ratio is set such that the RVP of the blended gasoline is equal to or less than a target RVP." *Id.* ¶ 47. U.S. Venture's employee further admitted that "the system calculates a blend ratio that will allow you to achieve that target [RVP]." *Id.* These admissions by U.S.

Venture demonstrate that the additional limitation of claim 3 is present in its Green Bay and Madison South systems, and therefore summary judgment is appropriate.

**Claim 8** of the '302 Patent requires all of the claim 1 elements and further requires "one or more pumps for regulating the flow of gasoline and or butane into the blending unit." *Id.* ¶ 50. U.S. Venture made no argument in its LPR 3.2 Final Non-Infringement Contentions that ███



███████████████████ *Id.* ¶ 54. Further, ███████████

███ shown in the annotated diagram at left. *Id.* ¶ 51. In addition, U.S. Venture's Operating Instructions confirm that ███████████ ███████████ *Id.* ¶ 52. U.S. Venture also testified that the piping that connects the tank of butane to the blending unit "does go through a series of valves **and pumps** and flanges." *Id.* ¶ 53. Its former terminal manager testified that butane was pumped from tanks to the blending skid by a supply pump. *Id.* Thus the claim 8 apparatus is met, and summary judgment is appropriate.

**Claim 9** of the '302 Patent requires all of the claim 1 elements and further requires "one or more valves for regulating the ratio of butane and gasoline blended by the blending unit." *Id.* ¶ 55. U.S. Venture made no argument in its LPR 3.2 Final Non-Infringement Contentions that ███████████████████████████████████████████████. *Id.*

¶ 59.  Further, ██████████████████████████████████████████████████

████████████████████████████████████ shown in the following annotated U.S. Venture

P&ID:



*Id.* ¶ 56.  In addition, U.S. Venture's corporate testimony is that the piping connecting the tank of

butane to the blending unit "does go through a series **of valves** and pumps and flanges," and that

"two meters and **two flow control valves** control the flow of butane into the gasoline stream."

*Id.* ¶ 57.  The former Green Bay terminal manager also testified that when the butane was

pumped to the blending unit, he knew if the blend ratio was adjusted because "we could see the

percentage that the valve was open" and the speed of the pumps.  *Id.* ¶ 58.

In summary, the U.S. Venture systems at Green Bay and Madison South meet every

element of the '302 Patent's apparatus claims 1–3, 8 and 9.  Indeed, U.S. Venture conceded

████████████████████████████████ in its Final Non-Infringement Contentions, and its

documents and witness testimony confirm ████████████████████████████████.

Judgment of infringement as a matter of law is well warranted.

###### ii.        Infringement of the '629 Patent Claims 1–3

The '629 Patent's claims 1–4 cover alternative embodiments of a system for blending gasoline and butane.  *Id.* ¶ 60.  Claims 1–3 are at issue in this Motion.

**Claim 1** of the '629 Patent is an apparatus claim and requires:

> 1. A system for blending gasoline and butane comprising:
>
> a) a tank of gasoline;
>
> b) a tank of butane;
>
> c) a blending unit downstream of and in fluid connection with the tank of gasoline and the tank of butane; and
>
> d) a rack downstream of and in fluid connection with the blending unit, wherein the rack is adapted to dispense gasoline to a gasoline transport vehicle.

*Id.* ¶ 61.  The '629 Patent's claim 1 includes the elements of claim 1 of the '302 Patent, but excludes the limitation requiring location at a tank farm and the limitation concerning a dispensing unit.  *Id.* ¶ 62.  Accordingly, all of the limitations of this claim are established by the evidence set forth above.  *Id.*

Similarly, **Claim 2** is identical to dependent claim 2 of the '302 Patent.  *Id.* ¶ 63.  Also identical is U.S. Venture's concession to ███████████████████████ in its LPR 3.2 Final Non-Infringement Contentions.  *Id.*  Accordingly, all of the limitations of this claim are established by the evidence set forth above.  *Id.*

On the other hand, the '629 Patent's **Claim 3** differs in that it requires all of the elements of apparatus claim 1 and further requires two new elements:

> a gasoline vapor pressure sensor operable for measuring the vapor pressure of gasoline upstream of the blending unit; and
>
> a butane vapor pressure sensor operable for measuring the vapor pressure of butane upstream of the blending unit.

*Id.* ¶ 64.  In its LPR 3.2 Final Non-Infringement Contentions, U.S. Venture conceded ██

████████████████████████████████████████████████████████████████████████

████████████████████████████████.”  *Id.* ¶ 76.  Claim 3 does not require use, only

an operable apparatus—and the sensors are present whether or not there is a fact issue as to use.

Indeed, the undisputed facts demonstrate the following: ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████  *Id.* ¶ 66.  U.S. Venture accepted Technics' offer without

modification, i.e., with the upstream vapor pressure sensors included.  *Id.* ¶¶ 65, 67–68.  ██

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  *Id.* ¶¶

68–69, 71.  That is all claim 3 requires.

As to the first requirement, the upstream (unblended) gasoline vapor pressure sensor,

U.S. Venture's P&ID shown below at left is annotated ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████.  *Id.* ¶ 69.  ████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████[3]  *Id.*  According

to the U.S. Oil Operating Instructions, ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████  *Id.* ¶ 70.  And as shown on the annotated P&ID below at right, ████████

████████████████████████████████████████████████████████████████████████

████████████████████████  *Id.* ¶ 71.



---

[3] ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.



The U.S. Oil Operating Instructions instruct ████████████████████████

███████████████████████████████████████████████. *Id.* ¶ 72. Thus,

despite arguing that ████████████████████████████████████████

███████ and U.S. Venture admits that by using these valves, gasoline from B1 could flow to one

analyzer and blended gasoline from C1 could flow to the other analyzer. *Id.* Similarly, U.S.

Venture's Operating Instructions state that ████████████████████████████████

███████████████████████████ *Id.* ¶ 73.

As to the second requirement, the same U.S. Venture P&ID (below at left) shows ███

████████████████████████████████████████████

████████████████████████████. *Id.* ¶

74. ████████████████████

███████████████████████

███████████████████████

████████████████. *Id.* U.S.

Venture's corporate representative

admitted that as initially designed, the systems installed at the Green Bay and Madison South terminals were intended to measure the RVP of butane, upstream (unblended) gasoline and downstream (blended) gasoline, *id*. ¶ 65, and that "Technics thought it [the butane sampling and analysis components] might be necessary so they included it," with U.S. Venture's agreement, *id*. ¶ 68.  The fact that U.S. Venture might have later decided not to use that function does not change that the apparatus is present.

In summary, all elements of the '629 Patent's claims 1–3 are met by U.S. Venture's blending systems at Green Bay and Madison South.  As was the case with the '302 Patent claims above, U.S. Venture conceded ▮▮▮▮▮▮▮▮▮ in its Final Non-Infringement Contentions, and its documents and witness testimony confirm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Summary judgment of infringement as to '629 Patent claims 1–3 is warranted and justified.

### D.    Technics Admits its System, as Installed, Requires a License

On June 22, 2012, former-Defendant Technics and Sunoco entered a settlement agreement.  *Id*. ¶ 77.  Technics denied infringement because it supplied components for only one of the elements of the independent system claims, for example, only the blending unit in the '302 Patent's claim 1 could have been provided by Technics, and Technics did not perform the claimed methods.  *Id*. ¶ 78.  However, Technics agreed and represented that the use of its system components when installed and combined at a tank farm with other components, such as the gasoline tanks, butane tanks and a rack, requires a license under the Patents.  *Id*. ¶ 79.  Technics' blending components were installed and used at Green Bay and Madison South.  *Id*. ¶ 20.

## III.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment

"Summary judgment is as available in patent cases as in other areas of litigation." *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011) (citations omitted). Summary judgment is proper when a moving party demonstrates that there is "no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If a non-moving party cannot establish a genuine issue for trial on any essential element of her claim, then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If there "is no factual dispute" that the accused product satisfies all of the elements of the asserted claim, then summary judgment of infringement may be entered. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1370 (Fed. Cir. 2009).

### B.    Patent Infringement

"The patentee bears the burden of proving infringement by a preponderance of the evidence." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985) (en banc) (citations omitted).  The patent infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope and then compares the properly construed claim to the accused device or method to determine, as a matter of fact, whether all of the claim elements are present in the accused device or method either literally or by a substantial equivalent. *See Lifescan, Inc. v. Home Diagnostics, Inc.*, 76 F.3d 358, 359 (Fed. Cir. 1996).  A claim is literally infringed if "each limitation in the asserted claim [is] found present in the

-16-

accused device." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995).[4]

## IV.   ARGUMENT

### A.   Infringement by the Apparatus at Green Bay and Madison South

#### i.   Every Element of the Eight Claims at Issue is Met in the Accused Systems

As shown above, and in the Statement of Facts with its attached Exhibits, each claim limitation is met in the Green Bay and Madison South blending systems.  U.S. Venture's only arguments as to non-infringement of all eight claims at issue are: ███████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████.  U.S. Venture also denies infringing claim 3 of both Patents on one additional basis. Each argument is incorrect, or irrelevant.  Each is addressed below.

#### ii.   U.S. Venture Conceded Almost Every Claim Element

The Local Patent Rules required U.S. Venture to "identif[y] as to each identified element in each asserted claim, to the extent then known by the party opposing infringement, whether such element is present literally or under the doctrine of equivalents, in each Accused Instrumentality and, if not, the reason for such denial and the relevant distinctions."  LPR 2.3. U.S. Venture was required to include this information in its Final Non-Infringement Contentions, which were due (and timely served) on July 8, 2016 (Krill Decl. Ex. 26, U.S. Venture's LPR 3.2

---

[4] Where a product does not literally infringe a patent claim, it may still infringe under the doctrine of equivalents if the differences between an individual element of the claimed invention and an element of the accused product are insubstantial.  *WarnerJenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 23–24 (1997).  However, it is believed that this Motion, and a determination of infringement, will not require an analysis of the doctrine of equivalents because the infringement is literal and because U.S. Venture ████████████████████████ in its LPR 3.2 Contentions as to the '629 Patent claim 3.

Final Non-Infringement Contentions ("FNIC") at 2), and cannot be modified without a showing of good cause.  LPR 3.2, 3.4.

As noted above, in its LPR 3.2 Final Non-Infringement Contentions, U.S. Venture provided vague, wordy, and evasive responses.  Yet U.S. Venture did not deny the literal presence of almost every element of the claims at issue in this Motion, and provided no reason why any element would be absent and no distinctions that matter as to the claims at issue.  For example, as to the straightforward element "a tank of gasoline" that appears in both the '302 and '629 Patents' claim 1, U.S. Venture wrote:



Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 1, 38 (emphasis added).  Instead of following the Local Patent Rules, U.S. Venture tried to admit only inferentially by ████████████ ████████ and claiming ██████████████████████████████████████ ████████████████

Likewise, for the straightforward limitation "a tank of butane," U.S. Venture provided a similar evasive, non-responsive answer:



*Id.* This again addresses only by inference that ███████████████, even though ████ ██████████████████████████████, and U.S. Venture's corporate witness was easily able to answer the following questions:

> Q   Okay.  So with respect – it's six terminals, right, where there's an automated blending system; is that your understanding?
> A   That's correct.
> . . . .
> Q   Am I correct that all six of these terminals have two or more tanks of gasoline?
> MS. DODD:  Objection.  Vague.
> A   For the six, yes.
> Q   And all six of these terminals have one or more tanks of butane located on the premises; is that correct?
> A   Yes.
> Q   All six of these terminals have a blending skid; is that correct?
> A   Yes.

SOF ¶¶ 33–34; Krill Decl. Ex. 16, Morrill Corp. Dep. 43:17–20, 46:25–47:10.  U.S. Venture's counsel could have readily obtained this information from their client before the preliminary and final contentions, but either did not make the effort or else purposefully gave answers lacking information.

Worse still, in certain dependent claims, such as dependent claim 2 of the '302 Patent which adds "a process control unit, wherein the process control unit generates a ratio input signal that controls the ratio of butane and gasoline blended by the blending unit," U.S. Venture's response was:



SOF ¶ 45; Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 3. U.S. Venture completely ignored the added limitation of "a process control unit." This same tactic and the verbatim non-answer was repeated for the '302 Patent's dependent claims 8 and 9. *Id.* at 10. These failures to address straightforward limitations, and thereby narrow the case to what is really at issue, increased the need for depositions and other discovery.

U.S. Venture should not now be allowed to argue that the undisputed and inferentially-admitted limitations are not present in order to oppose summary judgment. A court in this district recently addressed this very situation and held that no new arguments against infringement could be raised in summary judgment briefing. Specifically, in *Sloan Valve Co. v. Zurn Industries, Inc.*, No. 10-CV-00204, 2013 WL 6132598 (N.D. Ill. Nov. 20, 2013), the court did not permit the accused infringer to pursue a non-infringement theory first disclosed in a summary judgment brief which was not included in its non-infringement contentions:

> Zurn never previously disclosed this 'flexible bushing' argument. For the first time in its summary judgment brief, Zurn argues that its bushing is flexible and, thus, does not have a horizontal axis of plunger travel. Zurn never disclosed this non-infringement theory in its final contentions, never previously disclosed that its bushing was too flexible to allow a 'horizontal axis of plunger travel,' and never raised this theory in any of its expert reports. Sloan did not have notice of this non-infringement argument.

*Id.* at *11–12. Like here, the accused infringer never sought leave to amend its contentions—and the court held that summary judgment was too late to do so. *Id.* at *12 ("Further, Zurn failed to seek leave to amend its final non-infringement contentions to include this theory. It is now too late to do so.").

Other courts and the Federal Circuit have reached the same result as to infringement theories not disclosed in contentions. In *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324 (Fed. Cir. 2016), the Federal Circuit affirmed that a patentee was barred from

asserting a doctrine of equivalents theory not presented in its infringement contentions and where no leave to amend was sought under the district court's local patent rules. In *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1013–14 (Fed. Cir.), *cert. denied*, 136 S. Ct. 697 (2015), the Federal Circuit held that the district court did not abuse its discretion in precluding the patentee from relying on a theory first asserted in opposing summary judgment. In *Trading Technologies International, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *2–4 (N.D. Ill. Sept. 10, 2014), the district court struck portions of the patentee's technical expert's infringement report because it presented new theories of infringement not included in the amended final infringement contentions. *See also Thought, Inc. v. Oracle Corp.*, No. 12-CV-05601-WHO, 2016 WL 3230696, at *5 (N.D. Cal. June 13, 2016) (rejecting contention that one of the new theories was "implicitly" disclosed since contentions required an "explicit" disclosure under the patent local rules).

U.S. Venture's Final Non-Infringement Contentions are attached to the Krill Declaration as Exhibit 26, and can be reviewed to show there are almost no denials as to the specific claim elements at issue in this Motion. Even though evidence and testimony support the conclusion that all elements are present, U.S. Venture should not be allowed to first identify non-infringement theories in response to summary judgment.

### iii. At Best, U.S. Venture's LPR 3.2 Final Contentions Only Disputed Six Limitations in Four of the Eight Claims at Issue in this Motion

Considering the specificity required by the Court's Local Patent Rules, and the cases cited above, the non-specific refrain repeated 239 times in U.S. Venture's Final Non-Infringement Contentions—

—does not and cannot state a non-infringement position as to apparatus claim elements, but only as to how often method claims were performed for purposes of limiting damages. There are only six claim elements (out of fifteen) that U.S. Venture partially or fully disputed. *See* Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 1–4, 10, 38–40. Accordingly, in resolving this Motion the Court may find that both accused systems meet the '302 Patent claim limitations 1(a), 1(b), 1(e), and the added limitations of dependent claims 2, 8 and 9, plus the '629 Patent claim limitations 1(a), 1(b) and the added limitation of dependent claim 2, as each of these limitations are undisputed.[5]

### B. There are No Genuine Infringement Defenses

### i. Claim Construction Is Unnecessary to Determine This Motion

In the eight Patent claims at issue in this Motion, the construction of three elements of both Patents' claim 1 are disputed ("blending unit," "downstream" and "in fluid connection") and two elements of the '629 Patent's claim 3 are disputed ("operable" and "upstream"). *See* Joint LPR 4.2(f) Claim Construction Chart and Status Report, Dkt. 116 at 6–7. However, claim construction of each element is unnecessary to resolve this Motion because U.S. Venture infringes the apparatus claims at issue under its own construction as well as Sunoco's construction.

---

[5]     Specifically, the disputed or partially disputed limitations are, in the '302 Patent, claim limitations 1(c) ("a blending unit, at the tank farm, downstream of and in fluid connection with the tank of gasoline and the tank of butane") and 1(d) ("a dispensing unit downstream of and in fluid connection with the blending unit") and the limitation of dependent claim 3 ("wherein the ratio input signal is derived from a calculation of the ratio of butane and gasoline that will yield a desired vapor pressure"), and in the '629 Patent, claim 1 limitations 1(c) ("a blending unit downstream of and in fluid connection with the tank of gasoline and the tank of butane") and 1(d) ("a rack downstream of and in fluid connection with the blending unit, wherein the rack is adapted to dispense gasoline to a gasoline transport vehicle") and dependent claim 3 ("further comprises a gasoline vapor pressure sensor operable for measuring the vapor pressure of gasoline upstream of the blending unit; and a butane vapor pressure sensor operable for measuring the vapor pressure of butane upstream of the blending unit").

On the "blending unit" element, U.S. Venture's Final Non-Infringement Contentions admit ██████████████████████ and only dispute ████████ when stating that "█████ ████████████████████████████████████████████████████████████████ ████████████ SOF ¶ 37 (emphasis added).  Further admitting that ████████████████████, and only disputing ████████████ another element (the "dispensing unit"), U.S. Venture states that it ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████ Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 2.  U.S. Venture also admitted ██████████████████████████ in responding to '671 Patent claim 42 (not at issue), which contains a "blending unit" term (element c) but no ████████ to dispute.  For this element, U.S. Venture conceded the "blending unit" and only cut-and-pasted its oft-repeated statement:



*Id.* at 82.

Thus, U.S. Venture has never denied ██████████████████████ for purposes of contesting infringement, regardless of how it is construed, and only disputes the term for purposes of its invalidity and damages case.  Indeed, the parties' disagreement on the construction of the term "blending unit" concerns whether the blending unit has some intelligence of the system.  *See* U.S. Venture's Claim Construction Reply Brief, Dkt. 102 at 15 (U.S. Venture's proposal that the term be construed as "plain and ordinary meaning or, alternatively, 'a unit that blends.'").  Under either U.S. Venture's construction or Sunoco's, the accused systems have a blending unit.

Even Technics, the party that made components for the two blending systems at issue, admitted in its LPR 2.3 Initial Non-Infringement Contentions that, as to the claim 1 "blending unit" elements in both Patents:

> The blending unit is supplied by Technics but it is not up to Technics to determine where the blending unit should be placed . . . .

> The blending unit of Technics' butane blending system is in fluid connection with a tank of gasoline and tank of butane.

SOF ¶ 36. Thus, the party that made components for the blending systems agrees that a blending unit is present and that it is in fluid connection with a tank of gasoline and a tank of butane. And U.S. Venture, after months of dodging the issue, recently admitted that the blending unit is, as the claim states, "in fluid connection with the tank of gasoline and the tank of butane." *See* U.S. Venture's Opening Claim Construction Brief, Dkt. 86 at 17–18 (providing examples).

There is no dispute that U.S. Venture blends butane with gasoline. Its LPR 3.2 Final Non-Infringement Contentions state repeatedly that "███████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████." Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A (emphasis added) (repeating this phrase 239 times). In an interrogatory response, U.S. Venture confirmed that it ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Krill Decl. Ex. 36, U.S. Venture's Resp. to Interrog. No.4. There must be a fluid connection between █████████████████████████████████████████████████████████ ███████████████████████████████. Thus, U.S. Venture's admissions and the undisputed evidence show that a blending unit is present in the accused systems.

-24-

Similarly, U.S. Venture cannot create a genuine issue of material fact even with its flawed construction of the term "in fluid connection."  Despite "in fluid connection" appearing four times in both of the Patents' claim 1, U.S. Venture only asserted its proposed "immediacy" limitation as a non-infringement defense for two of those claim elements:  "a dispensing unit downstream of and in fluid connection with the blending unit" in the '302 Patent's claim 1, and "a rack downstream of and in fluid connection with the blending unit" in the '629 Patent's claim 1.  As to these limitations, U.S. Venture argued in its LPR 3.2 Final Contentions:



Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 2–3, 38–39.  But it is in its Claim Construction Reply brief, U.S. Venture conceded that even its own proposed "immediate flow" requirement is met *sometimes*:

> Although the accused systems are capable of blending to a tank that is simultaneously delivering gasoline to the truck rack as Sunoco argues (at 7), Sunoco does not dispute that the examples provided in U.S. Venture's opening brief also occur.

U.S. Venture's Claim Construction Reply Brief, Dkt. 102 at 6 n.1.  Thus, U.S. Venture concedes that the ***apparatus*** is arranged for immediate fluid flow from the blending unit to the rack or dispensing unit—because whatever U.S. Venture means by immediate in its proposed construction, simultaneous must be at least that—and that "the accused systems are capable" of meeting, and sometimes do meet, its proposed "immediate" limitation of the apparatus claims. With this admission, there is no reason to delay summary judgment as to the apparatus claims.

As to the terms "upstream" and "downstream," there is no dispute concerning their construction that impacts this Motion. The location of the equipment is not in dispute. While Sunoco believes these are common terms, U.S. Venture itself has told the Court that "the parties appear to agree in principle regarding the meaning of the terms," and only seeks construction because it believes "not all jurors will necessarily understand the meaning of these terms." U.S. Venture's Claim Construction Reply Brief, Dkt. 102 at 15.

Likewise, regarding the term "operable," there is no dispute that impacts the resolution of this Motion. The parties' dispute concerns whether the term "operable" allows for "modifications in the structure or the source code for the system." *See* Sunoco's Responsive Claim Construction Brief, Dkt. 95 at 22–24. That claim construction dispute is not relevant to this Motion because there is no genuine dispute that the accused systems at U.S. Venture's Green Bay and Madison South terminals already include upstream vapor pressure sensors which are capable of measuring the vapor pressure of the gasoline and butane. No modifications to the source code or structure are necessary, thus the claim construction dispute does not impact this Motion.

### ii. Whether U.S. Venture "Does Not Always" Perform Blending Methods is Irrelevant

Apparatus claims can be infringed regardless of whether an accused system is used or any method is performed. The Federal Circuit has explained:

> In addition to the actual use of the product described, infringement of an apparatus claim occurs when the invention is, among other things, made or sold in the United States. 35 U.S.C. § 271. Thus, even absent its use (or performance), this court has held that an apparatus claim directed to a computer that is claimed in functional terms is nonetheless infringed so long as the product is designed "in such a way as to enable a user of that [product] to utilize the function . . . without having to modify [the product]." Where, as here, a product includes the structural means for performing a claimed function, it can still infringe "separate and apart" from the operating system that is needed to use the product.

*Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 794–95 (Fed. Cir. 2010) (citations omitted). The court went on to explain that claims 2 through 6 of the asserted patent required "a rasterization circuit coupled to the processor that rasterizes" primitives in a certain way and "a frame buffer coupled to the rasterization circuit for storing" certain data. *Id.* The Federal Circuit noted that "even if the accused products cannot rasterize or store absent an operating system, they may include a rasterization circuit and a frame buffer for doing so. If they do, they infringe separate and apart from the operating system. . . . Because infringement of the claims at issue does not turn on activation, this court vacates the summary judgment ruling of noninfringement . . . ." *Id. See also Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311–12 (Fed. Cir. 2005) ("To infringe an apparatus claim, the device must meet all of the structural limitations." (citations omitted)); *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*."). Accordingly, U.S. Venture's repeated assertions that it ███████████████████ ████████, only ████████████████████, ████████████████████████ ██████, and other similar "use" qualifiers are irrelevant.

Moreover, in the asserted claims, the only claim that requires even the capability of a specific function is the '629 Patent's claim 3, which adds the limitations of gasoline and butane vapor pressure sensors "operable for measuring the vapor pressure" upstream of the blending unit. As to those claim limitations, U.S. Venture's system ████████████████ ████████████████████████████████████████████████ ████████████ The fact that the sensors are there and operable is all that is required.

In *Alticor Inc. v. Ultra-Sun Technologies, Inc.*, 106 F. App'x 46, 50 (Fed. Cir. 2004), the Federal Circuit explained:

> [T]he district court was generally correct in its understanding of the claim language: "radiant energy monitor *operable for* monitoring the performance of said source of radiant energy." Both parties assert, and we agree, that the claimed monitor is a device, e.g., an instrument, piece of equipment, or mechanism. We are also of the view that the "monitor" *be fit for or capable of* two discrete tasks: (1) "monitoring the performance of said source of radiant energy" and (2) "providing an indication when said source has reached end-of-life."

*Id.* (emphasis added). Actual operation is not the test. *See Edberg v. CPI-The Alternative Supplier, Inc.*, 41 F. App'x 426, 427 (Fed. Cir. 2002) (holding that for the claim phrase, "a medium which includes an effective amount of vitamin, amino acid, element and salt ingredients *operable to* allow viability and log phase reproduction of said target microbe in the presence of a nutrient-indicator and to aid the target microbe through lag phase and into log phase of growth in the medium/sample mixture," the district court did not err in finding that "a medium that is *capable of* supporting log-phase, reproductive growth of only the target microbes" is all that was required) (emphasis added).

District courts in this district have repeatedly held the same on similar language. For example, in *Tellabs Operations, Inc. v. Fujitsu Ltd.*, No. 08 C 3379, 2009 WL 1329153, at *13–14 (N.D. Ill. May 13, 2009), the court noted a term "is operable to" do X means "can" do X. As to the specific patent-in-suit, the court explained, "[t]hus patent '772 claims containing the language 'is *operable to* communicate a wavelength' and 'are each operable to communicate to . . . an individual wavelength' contemplate a device that *can* send a wavelength from point A to point B." *Id.* at *14 (emphasis added). In *Square D Co. v. E.I. Electronics, Inc.*, 685 F. Supp. 2d 864, 888 (N.D. Ill. 2010), the court construed the phrase "at least one application *operative to* punch through a firewall" to mean "an application that *has the ability* to communicate through a firewall." (emphasis added). In *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2012 WL 787240, at *5 (N.D. Ill. Mar. 9, 2012), the court agreed with a Special Master that the term "a

vehicle air conditioning system *operable to* provide engine on and off operation," only required "a vehicle air conditioning system *capable of* providing air conditioning when the vehicle engine is on and off." (emphasis added). And in *Chicago Mercantile Exchange, Inc. v. Tech. Research Group, LLC*, 789 F. Supp. 2d 986, 989 (N.D. Ill. 2011), the court held a "computer operative to" receive, process and store data meant "a programmable electronic device that *can* store, retrieve, and process data." (emphasis added).

There can be no real argument that "operable for" requires anything more than capability. U.S. Venture's documents ███████████████, as shown above. ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████ SOF ¶ 65–75. Moreover, U.S. Venture's corporate representative admitted that sampling of the raw (upstream) gasoline was done in initial testing of the system. *Id.* ¶ 68. U.S. Venture's corporate representative also admitted that Technics thought the upstream butane vapor pressure sensor might be necessary; U.S. Venture initially agreed, but later changed its mind because they "didn't find it a significant value." *Id.*

These facts prove that both the Green Bay and Madison South systems meet the limitations of the '629 Patent's claim 3, namely, a "gasoline vapor pressure sensor" and a "butane vapor pressure sensor" that are "operable for measuring the vapor pressure of gasoline [and butane] upstream of the blending unit." The fact that U.S. Venture ████████████ ████████████████████████████████████████████████████—█████████ ████████████████████████████ ████████[6]—can create a fact issue *only as to certain method claims.* As to the apparatus claim discussed above, the limitation is admittedly part of the system. Indeed, the software originally installed at Green Bay and used until mid-2014

---

[6]    U.S. Venture's corporate representative claimed that ████████████████████████████████. Krill Decl. Ex. 16, Morrill Corp. Dep. 98:12–14, 98:24–99:2. However, as noted above, this might matter as a disputed fact only as to the method claims, but such claims are not at issue in this motion.



SOF ¶ 75.  The same is true for the software originally installed at Madison South, which was used until mid-2013.  *Id.*  Therefore, U.S. Venture's arguments as to ████████ ████████████████, or whether ███████████████████, are irrelevant.  This is true even under U.S. Venture's proposed construction of "operable," since ███████████ ████████████████████████████████████████████████████.

### iii.    The Accused Systems Calculate a Blend Ratio that Will Yield a Desired Vapor Pressure

There is no genuine issue of material fact that U.S. Venture's systems at Green Bay and Madison South satisfy the limitations of '302 Patent claim 3.  Although denying infringement of this claim in its Final Non-Infringement Contentions, U.S. Venture admits—in the very next sentence—that its ████████████████████████████████████████ ████████████████ and use this ██████████████████████████████ ██████████ *Id.* ¶ 48.  In other words, immediately after denying infringement of claim 3, U.S. Venture admits that its systems ███████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.*

U.S. Venture's infringement of claim 3 is corroborated by the testimony of its corporate witness, who admitted that ███████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 47.  U.S. Venture further admits that ████████████████████████████ ████████████████████ *Id.*  Therefore, there is no genuine dispute that U.S. Venture's systems meet the limitations of claim 3 of the '302 Patent, and summary judgment is appropriate.

      **iv.** ███████████████████████████████████ **Does Not Avoid Infringement**

U.S. Venture's only other non-infringement position as to both Patents' independent first claims appears to be that ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ Krill Decl. Ex. 26, U.S. Venture's FNIC, Ex. A at 2, 39. In other words, U.S. Venture contends that because ████ █████████████████████████████████████████████ it avoids infringement. This is incorrect as a matter of well-settled law:

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write.

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 970 (Fed. Cir. 2000) (holding that accused infringer did not avoid infringement by painting trim of accused flooring panel because the addition of the paint did not eliminate any claim limitation or inherent feature of the claim).

Likewise, ██████████████████████████████████████ does not avoid claims that simply require a connection between the blending unit and the rack— particularly when U.S. Venture's former terminal manager testified that ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████:



██████████████████████████████████████████████████████

SOF ¶ 40; Krill Decl. Ex. 24, Chambers Dep. 169:11–23 (emphasis added).  Moreover, timing is

not an element of the apparatus claims; there must only be two elements with a fluid connection,

regardless of what is in between.  On this point, Mr. Chambers concisely explained that ████

██████████████████████████████████████████████████████

████████████████████████████████████"[7]  *Id.* at 44:11-17 (emphasis added).  In

fact, Mr. Chambers explained that ██████████████████████████████████████

██████████████████████████████████████████████████████

████  *Id.* at 73:15-18.  U.S. Venture's ████████████████████████████████

████████████████████████████.  Other cases make this clear.

For example, in *Northern Telecom Ltd. v. Samsung Electronics Co.*, 215 F.3d 1281,

1296–97 (Fed. Cir. 2000), the Federal Circuit explained that "if a patent requires A, and the

accused device or process uses A *and* B, infringement will be avoided only if the patent's

definition of A excludes the possibility of B. Statements simply noting a distinction between A

and B are thus unhelpful: what matters is not that the patent describes A and B as different, but

whether, according to the patent, A and B must be mutually exclusive."  The Patents only require

that the blended product flow from the blending unit to the rack—they make no distinction

between flowing from the blending unit to the rack, and flowing from the blending unit ████

████████████████████████.  *See also N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931,

945 (Fed. Cir. 1990) ("The addition of features does not avoid infringement, if all the elements

---

[7] ██████████████████████████████████████████████████
██████████████████████████████████████████████  Krill Decl. Ex.
24, Chambers Dep. 44:17–21 (emphasis added).

██

of the patent claims have been adopted."). Put simply, for purposes of the claims these are equally literal infringements.



Krill Decl. Ex. 18, Green Bay Fox Terminal Layout (US-0012955) (Sunoco annotations in red).

## V. CONCLUSION

U.S. Venture tried to replicate Sunoco's patented system, and at its first two terminals did so perfectly in regard to the apparatus. Later systems at other locations and modifications to software are irrelevant to these two systems. Accordingly, Sunoco respectfully requests that the Court grant summary judgment that U.S. Venture has infringed claims 1–3, 8 and 9 of Sunoco's '302 Patent, and claims 1–3 of Sunoco's '629 Patent.

DATED:  September 22, 2016                    Respectfully submitted,


                                             */s/   Michelle C. Replogle*

                                             George C. Lombardi
                                             glombard@winston.com
                                             Alyssa E. Ramirez
                                             aramirez@winston.com
                                             WINSTON & STRAWN LLP
                                             35 West Wacker
                                             Chicago, IL 60601-9703
                                             Telephone: (312) 558-5600
                                             Facsimile: (312) 558-5700

                                             John R. Keville
                                             jkeville@winston.com
                                             Michelle C. Replogle
                                             mreplogle@winston.com
                                             Luke A. Culpepper
                                             lculpepper@winston.com
                                             Michael C. Krill
                                             mkrill@winston.com
                                             WINSTON & STRAWN LLP
                                             1111 Louisiana, 25th Floor
                                             Houston, Texas 77002-5242
                                             Telephone: (713) 651-2600
                                             Facsimile: (713) 651-2700

                                             ATTORNEYS FOR PLAINTIFF
                                             SUNOCO PARTNERS MARKETING &
                                             TERMINALS, L.P.

## **CERTIFICATE OF SERVICE**

I certify that on September 22, 2016 a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service, via electronic filing using the Court's CM/ECF system.

/s/ *Michelle C. Replogle*
Michelle C. Replogle